[No. 5485-0-II. Division Two. April 30, 1984.]

JAMES T. PATCHELL, ET AL, *Respondents,* v. THE CITY OF PUYALLUP, *Appellant.*

*Blair B. Burroughs,* for appellant.

*Harold T. Hartinger,* for respondents.

PETRICH, C.J.—Having reconsidered our prior opinion, filed January 14, 1982, as directed by a notation order of the Supreme Court which remanded the case for further consideration in light of *Fisher Bros. Corp. v. Des Moines*

*Sewer Dist.*, 97 Wn.2d 227, 643 P.2d 436 (1982), our prior opinion is withdrawn and the following is substituted.

This appeal deals with the degree of compliance with statutory procedures required to invoke the court's jurisdiction under Const. art. 4, § 6 (amend. 65) to review local improvement district assessments and the inherent or equity power of the court to review such assessments because of jurisdictional defects.

The City of Puyallup appeals a judgment setting aside a local improvement assessment against the property of Marla and James T. Patchell. The trial court denied Patchells' statutory appeal because of a tardy filing of a bond and transcript, invoked its inherent or equity jurisdiction and set aside the assessment on the ground that the City's failure to abide with the statutory notice procedures of RCW 35.43.140, 35.43.150, and 35.50.005 deprived the City of its jurisdiction over Patchells' lot.

The City contends the failure to comply with the statutory notice procedure did not deprive the Patchells of a constitutionally guaranteed right to notice and a right to be heard, resulting in a jurisdictional defect of the proceedings, so as to justify exercise of the trial court's inherent jurisdiction to grant relief. On the other hand, the Patchells have assigned error to the trial court's denial of their right to a statutory appeal, claiming they have substantially complied with the statutory directives and substantial rather than strict compliance is all that is required.

The issues presented are:

1. Whether a timely filed notice of appeal to superior court by a property owner seeking statutory judicial review of a local improvement district must be stricken because of a tardy filing of a $200 cost bond and a transcript of city council proceedings.

2. Whether the City's failure to comply with the statutory scheme specifying the manner in which a local improvement district may be initiated and its failure to post preliminary assessment estimates which, when filed, determine the date of the lien as between a purchaser and

seller, constitute a jurisdictional defect permitting the court, in the exercise of its inherent or equity power, to invalidate an assessment on behalf of a landowner who purchased the property without notice of the City's noncompliance.

We hold that the delayed filing of the bond and transcript of the hearing before the city council did not amount to substantial compliance with the statutory procedures governing judicial review of assessment proceedings and that the plaintiffs were not entitled to statutory judicial review. We also hold that the City's noncompliance with the statutory scheme creating the district and its failure to post preliminary assessments do not amount to a jurisdictional defect and that the trial court was without jurisdiction to invalidate the assessment.

The facts are undisputed. The Patchells now own a corner lot at the intersection of 27th Avenue S.E. and 41st Street S.E. in Puyallup. In January 1978, the City passed a resolution initiating an LID for construction of water mains and asphalt paving in an area which included 27th Avenue S.E. but not 41st Street. At that time the Patchells' lot and two adjoining lots along 27th Avenue were owned by Mr. Edwin C. Woodiwiss. A hearing was held pursuant to the resolution as required by RCW 35.43.140 and 35.43.150, and on February 21, 1978, the LID was created by ordinance. The City did not file with the city treasurer a diagram of the LID and preliminary assessment roll as required by RCW 35.50.005. Shortly thereafter a number of property owners along 41st Street S.E., including Mr. Woodiwiss, petitioned the Puyallup City Council for inclusion of their properties within the LID. The terse request did not, however, comply with RCW 35.43.120, which requires certain procedural steps for the filing of a petition to initiate an LID. In July 1978, the City, without prior notice or hearing, adopted an ordinance designed to include 41st Street and other streets within the LID, as requested. Again, no filing was made with the city treasurer under RCW 35.50.005. The public works construction authorized

by the LID was begun on 27th Avenue in May 1978, and on 41st Street in September 1978, and was completed in each instance in about 18 months. The effect was that the lot now owned by the Patchells was assessed for LID construction on both of the streets which intersect at its corner.

Mr. Woodiwiss sold his corner lot in May 1978, when work was begun. It passed through the hands of successive purchasers until it was purchased by the Patchells in August 1979, just before the LID construction on 27th Avenue was completed and approximately 8 months before construction was completed on 41st Street. The City published the final assessment roll for the LID in April 1980, and mailed notice to the Patchells and other affected landowners. The Patchells objected to confirmation of the final roll, but the City adopted an ordinance on June 16, 1980, confirming the roll.

The Patchells filed a notice of appeal from the assessment, but they did not simultaneously file an appeal bond with the county clerk as required by RCW 35.44.220, and they failed to file within 10 days a transcript of the administrative record as required by RCW 35.44.230. In response to the City's pretrial motion to dismiss, the trial court found that it had no statutory jurisdiction over Patchells' appeal due to their noncompliance with the statutes, but ruled that it had inherent constitutional jurisdiction to decide the appeal nevertheless. The court proceeded to hold that Patchells were entitled to have the assessments against their lot set aside due to the City's noncompliance with RCW 35.43.140 and .150 (requiring notice of hearing to property owners prior to creation of an LID); and RCW 35.50.005 (the section requiring the municipality to file a diagram and preliminary assessment roll). The issue of whether Patchells' assessment is excessive or disproportionate was not addressed by the trial court and is not before this court.

In our prior opinion we agreed with the trial court's ruling that the court lacked jurisdiction to consider the statutory appeal because the filing of a bond and transcript of

the administrative record was untimely under RCW 35.44-.220 and .230. We relied on *Goetter v. Colville,* 82 Wash. 305, 144 P. 30 (1914) and its progeny which held that the jurisdiction of the court to hear appeals was conferred only by statute and strict compliance with the statutory mandate is required. Subsequently, the Supreme Court's decision in *Fisher Bros.* overruled *Goetter.*

The *Fisher Bros.* opinion pointed out that *Goetter* and its ensuing line of cases had overlooked Const. art. 4, § 6 (amend. 65), which states that the "superior court shall have original jurisdiction in all cases . . . which involve . . . the legality of any . . . assessment, . . ." and the opinion overruled those cases which held that the statute restricts the court's subject matter jurisdiction. In so doing, the court held that a similar statutory bond requirement at issue was procedural, rather than jurisdictional. The constitutional provision relied on in *Fisher Bros.* likewise was not cited to us in any of the parties' briefs.

■ We now must follow *Fisher Bros.* and hold that the Patchells' failure to comply with RCW 35.44 was merely a procedural defect. If substantial compliance can be found, the court had the power to hear and determine the case as an appeal under the statute. *In re Indian Trail Trunk Sewer Sys.,* 35 Wn. App. 212, 666 P.2d 378 (1983).

Here, substantial compliance is said to derive from the following chronology of events:

June 2, 1980 Final LID assessment roll approved.

June 10 Patchells prematurely filed a complaint (notice of appeal) in superior court without the required cost bond. (The assessment was not imposed until June 29, the effective date of the ordinance.)

June 11 Puyallup was served.

June 16 Ordinance confirming assessment was passed.

June 20 Day for filing transcript under RCW 35.44-.230 passed without filing accomplished.

June 29 Ordinance became effective.

July 16 Puyallup made documents available for inspection and agreed to assemble copies of documents material to pending court proceedings.

August 1 Patchells served and filed request for Puyallup to compile transcript of proceedings.

Aug. 7 & 13 Transcript and supplemental transcript given to Patchells.

August 8 Puyallup moves to dismiss for noncompliance with the statutory transcript and bond requirements.

August 13 Patchells file statutory cost bond of $200 64 days late calculated from filing notice of appeal or 45 days late assuming appeal filed on effective date of ordinance.

Aug. 13 & 14 Transcript and supplemental transcript filed 54 days late calculated from date of filing notice of appeal or 35 days late assuming appeal filed on date ordinance became effective.

In *Fisher Bros.*, the court in construing the substantially identical provisions of RCW 56.20.080 regarding sewer LID's, noted that one of the five protesting owners had filed his cost bond on time; that the other owners' bonds were filed before trial and before objection by the sewer district; that the total costs that the district could have been awarded had it prevailed in the litigation was only $35, and the district was not prejudiced by the late filing of some of the cost bonds. Here, by contrast, no timely bond was filed and no timely transcript was filed; indeed, neither of them was filed at all until after Puyallup moved to dismiss several days beyond the respective due dates. There is no claim that the City was responsible for this delay.

Substantial compliance is assessed on a case–by–case basis. *See In re Saltis*, 94 Wn.2d 889, 621 P.2d 716 (1980).

Substantial compliance has been defined as actual compliance in respect to the substance essential to every

reasonable objective of the statute. *Stasher v. Harger–Haldeman,* 58 Cal. 2d 23, 29, 372 P.2d 649, 22 Cal. Rptr. 657, 660 (1974). It means a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted. *In re Estate of Rudd,* 140 Mont. 170, 177, 369 P.2d 526, 530 (1962). What constitutes substantial compliance with a statute is a matter depending on the facts of each particular case. *Trussell v. Fish,* 202 Ark. 956, 961–62, 154 S.W.2d 587, 590 (1941).

*In re Santore,* 28 Wn. App. 319, 327, 623 P.2d 702 (1981).

 The objective of the statutory scheme is to assure speedy prosecution of the appeal and to prevent harassment by lengthy litigation. *Fisher Bros.* The entire statutory scheme regulating the appeal is designed toward this end.

Patchells' explanation of why the perfection of the appeal was not vigorously pursued after a timely filing of the original notice appears to be that up until July 16, when they discovered that the City neglected to file the preliminary assessment and map as required by RCW 35.50.005, they assumed they had an indemnity claim against their grantors under the warranties of their deed as well as a claim against their title insurance company.

However, even if we were to accept July 16 as the beginning of the appeal process, the filing of the bond and transcript extended well beyond the statutory timetable.

We hold that in this case where the bond and transcript were not filed until 64 and 54 days later (45 and 35 days late if measured from the effective date of the assessment), without excuse, and then only after the City had raised this issue by moving to dismiss, a finding of substantial compliance would render totally meaningless the plain statutory requirements. The trial court properly dismissed the statutory appeal.

 This brings us to the trial court's conclusion that it had inherent jurisdiction to vacate the assessment. We disagree. It has been held that when an LID assessment was not challenged by timely appeal, it nevertheless can be

challenged collaterally only if "jurisdictional defects" are apparent in the LID proceedings. *Longview v. Longview Co.,* 21 Wn.2d 248, 252, 150 P.2d 395 (1944). *See Pratt v. Water Dist. 79,* 58 Wn.2d 420, 363 P.2d 816 (1961); Trautman, *Assessments in Washington,* 40 Wash. L. Rev. 100, 126 (1965). A "jurisdictional defect" permitting a collateral attack may exist where a constitutional right has been violated in the assessment proceedings, such as the due process right to notice. *See Pratt v. Water Dist. 79, supra.*

Jurisdictional defects have also been found where the improvement was not for the public benefit, *Wiley v. Aberdeen,* 123 Wash. 539, 212 P. 1049 (1923); where the property improved was not public property, *Yakima v. Snively,* 140 Wash. 328, 248 P. 788 (1926); and where an assessment roll includes property not subject to assessment, *Seattle & Puget Sound Packing Co. v. Seattle,* 51 Wash. 49, 97 P. 1093 (1908). In such a case, a statute declaring the conclusiveness of the assessment, such as RCW 35.44.190, is inapplicable.[1]

Patchells claim the City's failure to abide by the statutory scheme deprived them of their due process right to notice and an opportunity to be heard. Although the council's noncompliance with RCW 35.43.140, .150 and

---

[1]RCW 35.44.190 provides:

"Whenever any assessment roll for local improvements has been confirmed by the council, the regularity, validity, and correctness of the proceedings relating to the improvement and to the assessment therefor, including the action of the council upon the assessment roll and the confirmation thereof shall be conclusive in all things upon all parties. They cannot in any manner be contested or questioned in any proceeding by any person unless he filed written objections to the assessment roll in the manner and within the time required by the provisions of this chapter and unless he prosecutes his appeal in the manner and within the time required by the provisions of this chapter.

"No proceeding of any kind shall be commenced or prosecuted for the purpose of defeating or contesting any assessment or the sale of any property to pay an assessment or any certificate of delinquency issued therefor, or the foreclosure of any lien therefor, except that injunction proceedings may be brought to prevent the sale of any real estate upon the ground (1) that the property about to be sold does not appear upon the assessment roll or, (2) that the assessment has been paid." *Cf.* RCW 35.43.100.

RCW 35.50.005 may have deprived the Patchells of notice of the pending assessment prior to purchasing the property, Patchells received notice of and made objections at a hearing prior to final confirmation of the assessment. The City's notice did not specifically advise Patchells of the City's failure to file the diagram and post the assessment roll as required by RCW 35.50.005. Nevertheless, insofar as the validity of the assessment is concerned, the notice and the opportunity to be heard was enough to satisfy the constitutional requirements of due process. The United States Supreme Court has held that where the Legislature has delegated the assessment of a tax to a subordinate body, due process requires only that the taxpayer shall have a hearing and notice sometime before the tax becomes "irrevocably fixed." *Londoner v. Denver,* 210 U.S. 373, 52 L. Ed. 1103, 1112, 28 S. Ct. 708 (1908). This principle applies here; the only notice required by due process is notice of the final hearing on the assessment. The provisions of RCW 35.43.140 and .150 and RCW 35.50.005 are not constitutionally mandated; they are merely statutory procedures.

Patchells contend that the failure of the City to file the diagram and preliminary assessment roll and post the proposed assessment roll required by RCW 35.50.005 deprived them of their right of indemnity against their grantors and their title insurance company citing RCW 35.50.010.[2] They purchased the property after the district was organized. If

---

[2]RCW 35.50.010 in pertinent part provides as follows:

"Assessment lien—Attachment—Priority. The charge assessed upon the respective lots, . . . confirmed by ordinance . . . for the purpose of paying the cost and expense . . . of any local improvement, shall be a lien upon the property assessed from the time the assessment roll is placed in the hands of the city or town treasurer for collection, but as between the grantor and grantee, . . . when there is no express agreement as to payment of the local improvement assessments against the real property, the lien of such assessment shall attach thirty days after the filing of the diagram or print and the estimated cost and expense of such improvement to be borne by each lot, tract, or parcel of land, as provided in RCW 35.50.005. Interest and penalty shall be included in and shall be a part of the assessment lien."

the City had complied with RCW 35.50.005, they claim they would have been entitled to recover against their grantor for breach of warranty and the title insurance company which insured their title. This statutorily created right, they claim, is a protected property interest under the due process clause of the Fourteenth Amendment. They contend that lacking notice of the City's failure to file the diagram and preliminary assessment roll, the hearing on the confirmation of the final assessment did not satisfy the requirements of due process under the constitution.

We are not prepared to state that under these circumstances the Patchells have or do not have such a protected property interest entitling them to a claim against the City for a deprivation of such an interest. Under the record before us we do not know whether there was an "express agreement as to payment of the local improvement assessment" between the Patchells and their grantors, thus nullifying the effect of RCW 35.50.010 or whether Patchells could or should have made an inquiry of city records to ascertain the status of the pending assessment. Our holding is limited solely to the validity of the assessment and that under these circumstances there is no "jurisdictional defect" in the proceedings. The validity of a claim against the City based on a claim of a deprivation of property without due process, if one exists, must await another proceeding.

In view of our disposition of the jurisdictional issue, it is unnecessary for us to consider the merits of the trial court's judgment.

Judgment reversed and remanded with direction to dismiss Patchells' challenge to the assessment.

PETRIE and REED, JJ., concur.

Reconsideration denied June 15, 1984.

Review denied by Supreme Court September 24, 1984.